UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JESSE L. STEWART,

                Plaintiff,

        -against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, SGT. KEVIN DALY,
CORRECTIONS OFFICER ANDREW LETO, SHIELD
NO. 850., CORRECTIONS OFFICER THOMAS
SALADINO SHIELD NO. 1207 and CORRECTIONS
OFFICER THOMAS WILLIAMS, SHIELD NO. 756,

                Defendants.
-----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
16-CV-1871(JMA)(SIL)

FILED
CLERK

11/21/2018 11:11 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Adrian A. Ellis, Esq.
Adrian A. Ellis, LLC
26 Court Street, Suite 1600
Brooklyn, NY 11242
    *Attorney for Plaintiff*

Brian C. Mitchell
Suffolk County Dept. of Law-County Attorney
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
    *Attorney for Defendants*

**AZRACK, United States District Judge:**

      Plaintiff Jesse L. Stewart ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983

against defendants the County of Suffolk ("County"), Suffolk County Sheriff's Department

("Sheriff's Department"), Sergeant Kevin Daly ("Daly"), Corrections Officer Andrew Leto

("Leto"), Corrections Officer Thomas Saladino ("Saladino"), and Corrections Officer Thomas

Williams ("Williams," together with the County, Sheriff's Department, Daly, and Leto, the

"Defendants"). Plaintiff alleges that while he was detained at the Yaphank Correctional Facility,

Daly, Leto, and Williams (together, the "Individual Defendants") used excessive force against him and showed a depraved indifference to his safety, well-being, and security.

Defendants have moved for summary judgment on Plaintiff's claims, asserting that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. (ECF No. 42.) For the following reason, the Court grants Defendants' motion for summary judgment and dismisses this case without prejudice.

## I. BACKGROUND

The facts set forth below are taken from Plaintiff's Amended Complaint (ECF No. 25) and the documentary evidence both parties submitted with their summary judgment briefing. Because Defendants moved for summary judgment, the Court must construe the facts in the light most favorable to Plaintiff and must resolve all ambiguities and draw all reasonable inferences against Defendants. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

On February 25, 2016, while Plaintiff was incarcerated at the Yaphank Correctional Facility, officers conducted a search of his housing unit, B-42. (Am. Compl. ¶ 14, ECF No. 25.) After his cell was searched, Plaintiff claims he was assaulted by the Individual Defendants, who ordered him to put his hands on the wall outside his cell, kicked him continuously, and then cuffed him by bending his wrist inward "in a martial art submissive technique," causing Plaintiff to suffer. (Id. ¶¶ 17–19.) While Plaintiff was handcuffed, Defendants punched him several times and Daly jumped on him, causing his head to strike the ground. (Id. ¶ 20.) Plaintiff was then strapped to a restraint chair with his hands behind his back and a mask over his face and rolled to the intake/booking area where he eventually received medical treatment for his injuries which he describes as "subpar." (Id. ¶¶ 21–22.)

The next day, February 26, 2016, Plaintiff filed a complaint with the Suffolk County Sheriff's Department Internal Affairs Bureau ("IAB"). (Decl. in Opp'n to Defs.' Rule 56 Mot. Ex. B, ECF No. 42-14.) In response to this complaint, Plaintiff was interviewed by IAB

investigators on March 3, 2016. (Pl.'s Mem. in Opp. 1, ECF No. 42-17.) However, at no point did Plaintiff file a "grievance" in relation to the incident that took place on February 25, 2016. (See Defs.' Rule 56.1 Statement Ex. A, at 155–60, ECF No. 42-4.) Instead, Plaintiff commenced the instant action on April 11, 2016 pursuant to 42 U.S.C. § 1983 ("Section 1983").

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc., 352 F.3d at 780.

### B. PLRA Exhaustion Requirement.

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust administrative remedies that are available to him or her before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory, and "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross v. Blake 136 S. Ct. 1850, 1856 (2016). However, in order to exhaust a remedy, it must be "available," meaning it is "'capable of use' to obtain 'some relief for the action complained of.'" Id. at 1859 (quoting Booth

v. Churner, 532 U.S. 731, 738 (2001)).

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id.

> First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

Williams v. Correction Officer Priatno, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting Ross, 136 S. Ct. at 1859–60).

## C.      Suffolk County Correctional Facility Inmate Grievance Procedure

Section V of the Suffolk County Jail Inmate Handbook is titled "Resolution of Problems" and under the sub-heading "Abuse Allegations," it states: "If you believe you have experienced abuse by staff . . . you must report it as soon as possible. You may report it to the Internal Affairs Unit and/or submit a grievance in accordance with the grievance procedure." (Defs.' Rule 56.1 Statement Ex. B, at 11, ECF No. 42-5, the "Inmate Handbook.") The next two pages detail a formal program called the "Inmate Grievance Program" by which inmates may file grievances. (Id. at 12–13.)

The Inmate Handbook identifies the steps an inmate should follow if he or she has a complaint or problem. First, the inmate should attempt to resolve the grievance by speaking to an officer in the inmate's housing unit. (Id. at 12.) If unsuccessful, the inmate must file a grievance with the Grievance Coordinator within five (5) days of the date of the incident giving rise to the grievance. (Id.) If the inmate does not agree with the decision by the Grievance Coordinator, the Inmate Handbook outlines an appeals process by which the inmate may first

appeal to the Warden and then the State Commission of Corrections.    (Id.)

D.    **Analysis**

To properly exhaust the available administrative remedies in compliance with the PLRA, inmates "must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 448 U.S. 81, 88 (2006)).    Defendants submit that the Inmate Grievance Program is the proper administrative remedy for Suffolk County Jail inmates.    (See Defs.' Mem. Supp. Summ. J. 9, ECF No. 42-10; Defs.' Rule 56.1 Statement ¶¶ 6–10, ECF No. 42-3.)    Plaintiff readily acknowledges that he did not file a grievance through this program.    (See Defs.' Rule 56.1 Statement Ex. A, at 155–60, ECF No. 42-4; Pl.'s Mem. in Opp. 1–2, ECF No. 42-17.)    Accordingly, based on the record before the Court, it is clear Plaintiff did not exhaust the administrative remedies "available" to him.

Plaintiff, through counsel, argues that the language in the Inmate Handbook is ambiguous and lures inmates into filing complaints with IAB instead of through the Inmate Grievance Program.    (Pl.'s Mem. in Opp. 4, ECF No. 42-17.)    Specifically, Plaintiff claims that the language permitting an inmate to report abuse "to the Internal Affairs Unit *and/or* submit a grievance in accordance with the grievance procedure," leaves open an interpretation that either method of reporting is a valid way to make a complaint.    (Id. at 1–2 (emphasis added).)

In support of this argument, Plaintiff turns to a three-pronged analysis previously used by courts in the Second Circuit.    (Id. at 3–4 (citing Hemphill v. New York, 300 F.3d 680 (2d Cir. 2004); Giano v. Goord, 380 F.3d 670 (2d Cir. 2004) abrogated by Ross, 136 S. Ct. 1850).)    He acknowledges that the first two prongs—whether administrative remedies were available to the inmate and whether the defendants inhibited the inmate's exhaustion of said remedies—are inapplicable to his facts.    (Id.)    He instead relies on the third prong, arguing that the ambiguity in

the Inmate Handbook is a "special circumstance" justifying Plaintiff's failure to strictly comply with the PLRA exhaustion requirements by filing a grievance through the Inmate Grievance Program.  (Id.)

However, this argument ignores that the Supreme Court specifically overruled the use of the judicially created "special circumstances" exception to the PLRA's statutory framework. Ross, 136 S. Ct. at 1857–58.  Indeed, the Supreme Court refused to permit even a limited exception to the PLRA exhaustion requirement when an inmate makes a reasonable mistake about the meaning of a prison's grievance procedures.  Id. at 1858.  The Supreme Court further stated that "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of caution."  Id. at 1859.

Thus, Plaintiff can only be excused from the PLRA exhaustion requirement if the Inmate Grievance Program was not "available to him," meaning he was not capable of using the program to obtain relief.  Id.  However, in his papers, Plaintiff seemingly acknowledges that the program was "available" to him.  (See Pl.'s Mem. in Opp. 3–4, ECF No. 42-17 (conceding that an analysis of whether administrative remedies were available to Plaintiff is inapplicable to his facts).) Moreover, Plaintiff does not make any argument that he fits in one of the three circumstances outlined by the Supreme Court in Ross in which a remedy is officially on the books, but not capable of use to obtain relief.

Furthermore, based on the record before the Court, the Inmate Grievance Program does not operate "as a simple dead end," and is not "so opaque that it [is], practically speaking, incapable of use."  Ross, 136 S. Ct. at 1859.  Nor has Plaintiff shown that the administrators thwarted him from taking advantage of the process "through machination, misrepresentation, or intimidation." Id. at 1860.  Indeed, Plaintiff was aware of the program, (see Defs.' Rule 56.1 Statement Ex. A, at 155–60, ECF No. 42-4.), and neither claims that filing his complaint with IAB prevented him from also filing a grievance through the Inmate Grievance Program, nor that anything other than

his misinterpretation of the Inmate Handbook prevented him from complying with the PLRA exhaustion requirements. Accordingly, Plaintiff failed to exhaust the administrative remedies "available" to him as required by the PLRA prior to filing his Section 1983 claim before this Court, and his complaint must be dismissed.

## E.    <u>Dismissal Without Prejudice</u>

Plaintiff argues that if his complaint is dismissed, it should be dismissed without prejudice. (Pl.'s Mem. in Opp. 5, ECF No. 42-17.) Defendants seek dismissal with prejudice. (Defs.' Reply Mem. Supp. Summ. J. 6–7, ECF No. 42-11.) While "failure to exhaust administrative remedies is often a temporary, curable procedural flaw," dismissal with prejudice is appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them." <u>Berry v. Kerik</u>, 366 F.3d 85, 87–88 (2d Cir. 2004) (citations omitted). As discussed herein, exhaustion was required, and Plaintiff was aware of the Inmate Grievance Program, yet failed to avail himself of the opportunity to use it. Moreover, given the time that has passed since the February 25, 2016 incident, it seems unlikely that Plaintiff can now cure the defect by using the Inmate Grievance Program. However, the parties have not adequately addressed whether this administrative remedy is still available to the Plaintiff. Accordingly, Plaintiff's complaint is dismissed without prejudice.

## III.    CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment is granted and the complaint is hereby dismissed without prejudice. The Clerk of the Court is respectfully directed to close this case.


**SO ORDERED.**                                         ___/s/___(JMA)_____
                                                        Joan M. Azrack
Dated:   November 21, 2018                              United States District Judge
         Central Islip, New York